## The Merchants National Bank of Chicago v. William J. Manning.

### Gen. No. 13,527.

CONTRACT—*release construed.* A release passing between attorney and client set forth in this opinion is made the subject of construction and is held, among other things, to contain no express or implied agreement for future employment.

Assumpsit. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1907. Reversed. Opinion filed December 23, 1907.

**Statement by the Court.** In the court below the appellee was defendant and the appellant plaintiff, and they will be so denominated in this opinion.

The plaintiff sued the defendant in actions of assumpsit in the Circuit Court in two suits. The first was on two notes signed by defendant, each for $250, dated December 26, 1899, and payable to the order of the plaintiff in two and three years after date respectively, with interest at the rate of 4 per cent per annum. This suit was begun January 9, 1903. On February 14, 1903, the defendant paid $100 on one of the notes sued on. In this first suit a plea of set-off was filed by the defendant February 6, 1903, which set up that plaintiff was indebted to him in the sum of $8,861, for services as attorney and solicitor, the reasonable value of which was that sum. There was also a second plea of set-off, which included certain of the consolidated money counts and averred that the defendant reasonably deserved to have of the plaintiff the sum of $8,541.48 for services as the attor-

ney and solicitor of the plaintiff. To these pleas of set-off was appended, as an account sued on, the formal charge of $9,000 on each of the money counts included in the second plea and this specific item:

"For services rendered, disbursements made and obligations incurred on behalf of said Bank as one of the prosecuting creditors whose claims aggregate $28,272.32 and were allowed by the Court in the suit of Swain P. Chick et al. v. Northwestern Shoe Co. et al., now pending in the Circuit Court of the United States for the Northern District of Illinois, Northern Division,                    $8,851.48."

To these pleas the plaintiff first filed four replications. The first one denied the indebtedness alleged in the pleas and concluded to the country. The third alleged in general terms a release by deed on December 26, 1899, of all demands which the defendant then had against the plaintiff; and the fourth alleged an accord and satisfaction as to said demands before the commencement of the suit. With the exception of the formal parts we give the second replication in full, as it contains the release, the construction of which forms the vital issue in this case:

"All the several supposed causes of action or set-off mentioned in said pleas of defendant accrued and were owing to the defendant prior to the 26th day of December, 1899, and prior to the commencement of this suit, to-wit, on December 26th, 1899, the defendant executed under his hand and seal and delivered to the plaintiff his, defendant's, release in writing in the words and figures as follows, to-wit:

'Know all men by these Presents, that I, William J. Manning of Chicago, in consideration of one dollar to me in hand paid and for other valuable considerations do hereby forever release and discharge the Merchants National Bank of Chicago of and from all claims and demands of every nature and description I may have against it at law or in equity down to the date hereof.

'But this release is without prejudice to the right of said Manning in case of a recovery by the complainants or intervening creditors in the suit of Chick et al. v. Northwestern

Shoe Company et al., now pending in the Circuit Court of the United States for the Northern District of Illinois after payment of court costs to present and have allowed to him by said Court in said cause out of the proceeds recovered therein before any dividend is paid to creditors, such sums, if any, for his disbursements and solicitor's fees as said Court shall determine have been paid out and rendered for and on behalf of the complainants, the co-complainants or interven-vening creditors in said cause.

'Witness my hand and seal this 26th day of December, 1899.

WM. J. MANNING,  [SEAL].' "

A rejoinder was filed by the defendant to the fourth replication traversing the accord and satisfaction and concluding to the country.

After rejoinders to the second and third replications had been successfully demurred to an amended rejoinder was filed by the defendant to them.   This rejoinder (filed October 14, 1905) alleged that at the date of the said release, December 26, 1899, plaintiff was indebted to defendant in the sum of $7,441.28, which was the reasonable value of defendant's services as attorney and solicitor in prosecuting in behalf of plaintiff certain actions at law and in equity against the Northwestern Shoe Company; that the cause was pending in the United States Circuit Court, and owing to a controversy which had arisen over a guaranty defendant had made to the plaintiff on account of the Columbia Harness Company, the plaintiff had at that time notified defendant that it did not wish him further to represent it in said cause, and thereupon defendant notified plaintiff of the amount of his bill, and that he should continue to represent it until the bill was paid; whereupon the plaintiff made no effort to obtain the substitution of another solicitor in the said cause, but advised the defendant that until some settlement of the Columbia Harness Co. matter was made, it did not wish the defendant to incur further expense in said cause or further represent it, and thereafter and not otherwise the parties got together to adjust the Columbia Harness Company matter,

and the release set out in said replication was executed and delivered by the defendant, and it was understood and agreed as a part of said release, and evinced upon the face thereof, that the defendant should continue to represent the plaintiff bank in said cause therein referred to, which he did for several years thereafter. The said bank at the same time that said pretended release was executed, executed and delivered to the defendant a receipt for his five notes for two hundred and fifty dollars each, payable in one, two, three, four and five years after date, with interest at 4 per cent per annum in full of all demands to date, the receipt containing the agreement as to the settlement being without prejudice as to certain rights of the defendant in identically the same words in which it appears in the release recited in the replication. The defendant "in that behalf and with that understanding" perfected the appeal to the United States Circuit Court of Appeals, where the case was briefed at very great length on both sides, and argued and subsequently reargued, resulting in the affirmance of the decree of the Circuit Court sustaining the exceptions theretofore filed to the master's report in said cause. Thereupon the defendant prosecuted a writ of certiorari seeking to take said cause thereby to the Supreme Court of the United States, which was denied. Thereupon E. A. Otis appeared in open court, and being duly authorized by the bank to do so, advised the judges thereof, and notified the defendant, in behalf of said bank, that the defendant was not authorized to use the name of said bank in said proceedings, or to take further steps therein to effect a recovery in said cause in behalf of said bank. The master in chancery in said Chick case had recommended a decree in favor of the creditors against John Hannah and Jacob Graff for $66,856.01, and against Barnett Graff and Frank Harris for $130,605.10, and a decree was accordingly entered against said parties for said sums, which remained unreversed.

While said proceedings were pending it came to the knowledge of the defendant that Moses Harris, the father of Frank Harris, had died intestate and Frank Harris had inherited property from him, and it had also come to the knowledge of

the defendant that John Hannah had made a fraudulent conveyance of valuable farm property in Boone County, Illinois, which should be set aside to satisfy the demands of the said bank and other creditors of the Northwestern Shoe Co. Defendant being desirous of further prosecuting said suit for the purpose of recovering the sums justly due said creditors in said cause and thereby reimbursing himself for the value of his services and disbursements under the contract of employment as aforesaid, which then amounted to $9,923.80, attempted to proceed in said cause as against Frank Harris, John Hannah, Barnett Graff and Jacob Graff, and was prevented by the plaintiff, who notified him and notified the courts that the defendant had no authority to proceed therein, and thereby defendant was rendered unable to carry said matters to a final conclusion, whereby plaintiff became liable to defendant to pay the fair and reasonable value of defendant's services and disbursements in said cause under said contract of employment, amounting to $9,923.80.

A demurrer filed by the plaintiff to this rejoinder was overruled, whereupon the plaintiff filed several surrejoinders, which were all successfully demurred to and are out of the case except one. This one (the third amended surrejoinder filed February 23, 1906) alleged that plaintiff ought not to be barred, etc., because "it was not understood and agreed as a part of said release nor was it. at any time agreed by the plaintiff with the defendant; that the said defendant after the execution of said release should continue to represent the plaintiff in said cause of Chick et al. v. The Northwestern Shoe Co. et al.," and concluded to the country.

By leave of court the plaintiff afterward filed an additional replication, which was subsequently amended and in its amended form was filed February 23, 1906. It set up that the services and disbursements in the defendant's pleas of set-off mentioned were not rendered or made in behalf of the plaintiff separately, but in behalf of several other named parties as well, and were therefore not the separate obligations of the plaintiff, but the joint debts of the plaintiff and

all the other parties mentioned, and could not be set off against the plaintiff's demands.

To this amended additional replication the defendant filed a rejoinder (March 19, 1906), which declared that the said services and disbursements were rendered and made in behalf of the plaintiff severally and were not rendered and made in behalf of the other parties named, and concluded to the country.

It will thus be seen that by the pleadings in the first case four issues of fact were made. There was no plea denying the liability of the defendant on the notes, and these issues are entirely on the pleas of set-off. The first is made by plaintiff's replication of non-assumpsit filed December 5, 1904; the second by plaintiff's replication of December 5, 1904, alleging an accord and satisfaction, and the defendant's rejoinder traversing the same filed December 24, 1904; the third by the assertion in the defendant's amended rejoinder of October 14, 1905, and the denial in plaintiff's third amended surrejoinder of February 23, 1906, that there was an understanding or agreement as a part of the release of December 26, 1899, or otherwise, that the defendant should after the execution of said release continue to represent the plaintiff in the case of Chick et al. v. The Northwestern Shoe Company et al.; and the fourth by the assertion in plaintiff's amended additional replication filed February 23, 1906, and the denial in defendant's rejoinder filed March 19, 1906, that the alleged claims in set-off were joint obligations of certain parties and not separate or several obligations of the plaintiff.

After this first suit by the plaintiff against the defendant had been pending for about two years, another was brought (December 28, 1904) on two other notes of exactly the same tenor as those sued on in the first suit, except that one of them was payable four years after the date thereof and the other five years after said date. The pleadings so proceeded in this second suit, and such stipulation was made, that the same issues of fact were finally presented as in the prior suit and by the same final joinders.

In the second suit, however, the defendant claimed in his pleas of set-off as due for services in the Chick case $10,872.14, and he filed with them an itemized account for the same, with items which began on April 30, 1893, and ended (except for an interest charge) on November 10, 1902.

By stipulation the two suits were consolidated, a jury was waived, and the cause submitted to the court. It was tried by the court, the trial beginning on December 26, 1906. Of course there was no defense on the notes, but the court found the issues for the defendant on the pleadings in set-off and assessed his damages at $2,941.30. A motion to set aside this finding and for a new trial and a motion in arrest of judgment were overruled by the court, and judgment was, on January 24, 1907, given for the defendant for the amount of the finding. From that judgment the plaintiff appealed to this court, and has here assigned errors which challenge the finding of the court below on the facts put at issue by the pleadings, and also its ruling on the law of the case, as shown by its sustaining the defendant's demurrers to the first and second amended surrejoinders of the plaintiff to the amended rejoinder of the defendant to the second and third replications of the plaintiff to the several pleas in set-off of the defendant. It is, however, only an objection to the ruling on the demurrer to the second of the amended surrejoinders that the plaintiff argues. This surrejoinder set up that as to so much of the services as were rendered by the defendant prior to the release of December 26, 1899, the release constitutes a full discharge, because as a consideration for the release and the promissory notes given to it by the defendant, the plaintiff cancelled and delivered to defendant a written contract of guaranty, which the defendant had before executed and given to plaintiff and on which defendant had become liable to plaintiff in the sum of eight thousand dollars, and because the plaintiff also cancelled said indebtedness and delivered to defendant a receipt in full of all demands to date, and also two hundred and forty-seven shares of the capital stock of the Columbia Harness Company, which the plaintiff had been given by the defendant as collateral security for his said indebtedness, all of which

matters, the cancelled contract of guaranty and the said stock and receipt, the defendant still retained and had at no time returned or offered to return to the plaintiff, to whom the indebtedness of $8,000 still remained unpaid. These allegations the plaintiff offered to verify. As to so much of said services as the defendant alleged in his pleading were rendered and made subsequent to the execution of the release of December 26, 1899, the plaintiff in the same surrejoinder alleges it did not undertake or promise, etc., and puts itself upon the country.

The demurrer to this surrejoinder, which was sustained, for special causes of demurrer says that the said surrejoinder concluded to the country, when it should have concluded with a verification, that it attempted to put in issue mere inferences and matters of law, and that "the plaintiff hath in and by its last mentioned plea supposed that the defendant has rescinded or sought to rescind the contract of December 26, 1899, when in truth and fact the defendant hath not rescinded or sought to rescind said contract."

The sustaining of this demurrer the plaintiff insists was erroneous.

It also attacks the rulings of the court in holding and refusing certain propositions of law, and in its refusal to admit evidence offered to prove the amount due plaintiff from defendant at the time the release of December 26, 1899, was executed.

HOLLAND & ELLIOTT and W. K. OTIS, for appellant.

CHARLES H. ALDRICH, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Although there is before us in this appeal a transcript of a thousand printed and typewritten pages, an abstract of 375 printed pages, and altogether about 200 printed pages of argument, which has been supplemented by able oral arguments before us, the questions at issue lie within a small compass.

There is no doubt that defendant is liable to plaintiff on the four promissory notes which are sued on, and which amount, taking into account a payment made since this suit began, to $900 with interest at 4 per cent per annum from December 26, 1899, to February 14, 1903, on $1,000, and on $900 since that date.

The dispute is whether the plaintiff is indebted to the defendant in a greater sum, as was found by the court below, and this largely at least depends on the meaning and construction to be put on a few words in a release of that same date, December 26, 1899, executed by the defendant to the plaintiff and repeated in the receipt given by plaintiff to defendant for his notes.

The great mass of testimony is principally devoted to putting a construction on those words by the light of surrounding circumstances and previous and contemporaneous communications. We are unable to agree with the appellee or with the court below on this construction.

The entire basis for the claim of the defendant in set-off is that it was agreed as a part of the release of December 26, 1899, that the defendant should continue to represent the plaintiff bank in a certain action then pending in the Circuit Court of the United States for the Northern District of Illinois, entitled Chick et al. v. The Northwestern Shoe Company et al. This was set up in the defendant's amended rejoinder filed to the plaintiff's second and third replications and was traversed by the defendant's amended surrejoinder, as the statement prefixed to this opinion shows in detail. This formed the third issue of fact joined by the pleadings, as is shown also by said statement, but if it should be found for the plaintiff, it must dispose of the others as well. There could then be no reasonable ground to uphold the plaintiff on the first or second of these issues, and the fourth would become immaterial.

The allegations that the plaintiff at the time of the release of December 26, 1899, agreed with the defendant for further employment on a contingent fee, or otherwise,

and that this contract was afterward broken or interfered with by the plaintiff without the defendant's fault, are the very gist of this cause. If the defendant cannot sustain them he cannot and should not recover either strictly on the pleadings or in the larger equitable view which the court below indicated that he took, for it is plain that without these elements the said release of December 26, 1899, must have discharged all indebtedness for previous services, and there is no claim of employment of the defendant by the plaintiff for services to be performed *after* December 26, 1899, except on that date and contemporaneously with the execution of the release.

The defendant in his amended rejoinder says that it was evinced on the face of said release that the defendant should continue to represent the plaintiff in the Northwestern Shoe Company case. We cannot see where this agreement is found. The reservation clause in which alone, of course, it would exist, either expressly or impliedly, keeps for defendant the right to present and have allowed to him by the Circuit Court of the United States, out of the proceeds that might be recovered in that case "by the complainants or intervening creditors" such sums, if any, for *his* disbursements and solicitor's fees as said court shall determine *have* been paid out and rendered for and in behalf of "the complainants, the co-complainants or intervening creditors in said cause."

We cannot see how, taken by itself, this provision contains any express or implied agreement for future employment of Mr. Manning. It is perfectly consistent with the claim made by the bank that it was entirely understood that the bank might not continue in the case, and if it did, that it was to be represented not by Mr. Manning, but by its usual counsel.

Viewed moreover in the light which the other evidence in the record throws upon it, the language seems to us quite plainly to indicate the purpose of its insertion in the release.

The case had passed from a prosperous and hopeful stage to the complainant and creditors on the master's report, to

a doubtful and discouraging one on the decree of the court dismissing the bill against several of the defendants. Mr. Manning was not convinced that he was wrong, and was determined to press the matter further in behalf of some of the interested parties at least. If he should go to the Court of Appeals and secure the reversal of Judge Jenkins' decree and the virtual confirmation of the master's conclusions, a considerable fund would be at hand for distribution. On that fund, according to the usual procedure of the court, there would be an equitable claim in favor of the lawyer's fees and expenses which had been paid by the prosecuting parties at any previous stage of the proceedings, or for which they were liable either absolutely or contingently. An absolute release for consideration of a claim for several thousand dollars for such fees and disbursements from Manning to the bank on December 26, 1899, would certainly have furnished ground for the bank to claim payment to itself of whatever part of the fund that thus might be recovered, which should be set-off as compensation for the legal fees and expenses, incurred by the bank prior to December 26, 1899, and released to it by Manning on that date.

If anything more than a protection against such a claim of the bank and a reservation to himself of such an allowance, if made, was intended in favor of Mr. Manning by the clause in question, it is strange that it was not expressly stated in terms which could not be mistaken.

It is claimed by the appellant that the decision of the court below in this case was presumably made wholly on the construction of the reservation clause in the release and receipts of December 26, 1899, and this position finds color in the rulings of the court in the fourth proposition of law submitted by the plaintiff and rejected by the court, and the first proposition of law submitted by the defendant and held by the court. These propositions are as follows:

Plaintiff's fourth proposition, rejected by the court:

"If it appears from the evidence that at the time of the execution of the release of December 26, 1899, and prior

thereto, the defendant represented certain of the complaining creditors in the suit of Chick v. The Northwestern Shoe Company in the Circuit Court of the United States for the Northern District of Illinois, and that the defendant had taken an active part in the prosecution of such suit such as might entitle him to an allowance of solicitor's fees out of the fund recovered, if any, and if it further appears that the plaintiff was not a party complainant in said suit, and had not appeared in the same except to prove up its claim before the master in accordance with an order of court, in such case the Court holds that no obligation was imposed upon the plaintiff by the reservation in said release in regard to solicitor's fees and disbursements to take any part in subsequent proceedings in said case or to allow the defendant to take any proceedings in its name or to incur financial obligations on its behalf, and the burden of proof is on the defendant to show by a preponderance of evidence that such an agreement was made."

Defendant's first proposition, held by the court:

"The agreement exchanged between the plaintiff and defendant on December 26, 1899, together with the stipulation withdrawing the plea of set-off in the case then pending between the parties in the Circuit Court of Cook county, were effective for two purposes:

First: To settle all matters of difference between the parties to that date, both with respect to the Columbia Harness Company and the claim of defendant for services in the Chick case on the part of the plaintiff.

Second: To establish the right of the defendant, Manning, to go forward in the Chick case and receive pay for his services from any fund realized. This right to go forward with the litigation is as much a part of the agreement as the settlement."

We have made it clear that if the construction placed on the reservation by the court made that reservation by itself sufficient to prove the further employment of defendant by the plaintiff, we do not agree with that construction.

On the contrary we see no reason why the fourth propo-

sition of the plaintiff above quoted does not state the law accurately. If the agreement in the release and receipts did not by themselves show the further employment of Manning, that employment becomes a question to be decided by parol evidence, and the burden must have been on the defendant who introduced it as new matter in his rejoinder to prove it.

There is a conflict of evidence, of parol evidence, on this point; but we cannot hold otherwise than that the defendant signally failed to establish by a preponderance of evidence his contention. The appellee himself testified concerning this matter as follows:

The question was asked him: "Mr. Manning, what was said, if anything, at the time these so-called releases were executed on December 26, 1899, about the further prosecution of the Chick case?"

He answered: "It was said I should proceed with the prosecution of the suit in the same manner that I had been prosecuting it for the creditors whose claims represented $28,272.32, of which the bank's claim was $5,726, and the principal prosecuting creditor, and that the case was to be prosecuted; and the only question between Judge Otis and myself was, he told me at that time he hadn't even read the record, that he was going to look the record over, and he might possibly want to come in to assist me, and I said I had no objection."

In contradiction of this Mr. Otis testified: "My first interview with Mr. Manning leading up to the settlement of December 26, 1899, was on December 15, 1899.    *    *    * The next conversation took place December 23rd at my office.    *    *    * We met again on the 26th of December, 1899.    *    *    * In one of these three conferences, either December 15th, 23rd or 26th, the question came up as to what the bank was going to do. I was attorney for the bank at that time in the Chick case. Its claim had been proved up for about $5,600, and the question was asked by Mr. Manning, 'What does the bank propose to do with its claim?'    *    *    * I told Mr. Manning that this was

the position of the bank, that I was acting as its attorney and would examine the record, and if in my judgment I thought there was a fair chance of success in the case, and it was determined to appeal, I would advise the bank to join in that appeal" (Mr. Manning represented other parties in the case), "and would myself appear as the attorney of the bank and represent it and take part in the argument of the case. On that occasion Mr. Manning did not say literally or in substance that this settlement was not to prevent him from continuing in the Chick case as attorney for the Merchants' National Bank. He made no such statement of that kind on that occasion. * * * Never on any occasion after I began our conferences about the settlement of December 26, 1899, did he say that he made it a condition of the settlement that he should continue to represent the bank in the Chick case after the settlement. I am not sure whether I met him once after the settlement in regard to the subject. He referred me to his associate, Mr. Bulkley, who was more familiar with the details, and I did see Mr. Bulkley. In the meantime I had looked over Mr. Aldrich's brief and examined the record in the Chick case, and I told Mr. Manning that the bank had decided not to appeal. Mr. Manning did not state to me that he was going on to represent the bank in the appeal any way. He made no such statement to me. He never at any time said he was going to represent the bank, except as he says it in his letters after the maturity of the first note. * * * When I was proceeding to make the settlement with Mr. Manning in the Fall of 1899, the officers of the Merchants' National Bank, Mr. Blair and Mr. Crosby, both told me to settle with Mr. Manning for all claims he had against them and they against him, and to get rid of him." * * *

The Court: " In this connection I would like to ask, did you communicate to Mr. Manning your instructions from the bank officials in any way?"

Answer: "Yes, sir. I said we were there to settle all

claims he had against the bank and all claims the bank had against him."

Both these witnesses stand unimpeached before us, but the burden of proof is upon Mr. Manning, as we hold. On our assumption that both witnesses are intending to be truthful, it is evident that there was a very serious misunderstanding of what the situation between the bank and Manning, outside of the release of claims to that date, was to be. But such misunderstanding, if it existed, does not sustain or relieve the burden which falls on Mr. Manning under his pleadings to prove his employment.

There is a question raised by the appellant as to the power of Mr. Otis, who was, it would appear from his testimony, the representative of the bank in this settlement for the purpose of finally severing its relations with Mr. Manning, to re-employ him, but apart from this altogether we find that there is no sufficient proof in the written instruments involved or in these conflicting statements recited that any attempt was made to do so.

The defendant, however, claims justification for his construction of the instruments and corroboration of his version of the negotiations and contract between him and the bank in the surrounding circumstances shown by the documentary evidence put in evidence by him and by his testimony in connection therewith. It is not to be expected that we should go over in detail this testimony and this correspondence in this opinion. It is sufficient to say that we have consciously considered it and find no such inference to be derived from it.

Rather we should say that the plaintiff was justified in the contention it makes that "Mr. Manning was discharged as attorney for the bank on June 4, 1898 (which discharge was acquiesced in by his letter of June 4, 1898), and never afterwards re-employed, and that any claim he had for services was settled December 26, 1899."

As we thus interpret the record it is plain that we must hold that the first three of the four issues of fact raised

by the pleadings must be decided by us for the plaintiff, and that this makes the fourth immaterial.

This in itself disposes of this case, for it is on the issues raised by the pleadings, and not on some other view of the case, that the cause must be decided by us. The cases cited by defendant are either on the proposition, not denied by the plaintiff, that evidence was properly received to throw light on what was included in the release, or upon the proposition, which becomes immaterial if our holding as to the re-employment of Mr. Manning be correct, that a lawyer employed on a contingent basis is entitled to carry on the litigation to a final conclusion, and if the client interfere by dismissing either the suit or the lawyer, he makes himself liable for services rendered on a *quantum meruit* basis. But the possible applicability of these cases rests on the point first set forth in appellee's brief, which was the proposition on which the court below also founded his judgment, that the agreement of December 26, 1899, placed the appellee in the position of an attorney employed on a contingent basis. As we do not concur in this view of the matter, it is needless for us to discuss the cases.

But as the learned judge below, in his opinion on the motion to set aside his finding, which is inserted in the record, declared that while it might be true that "under the technicalities of the law the defendant's pleadings might not be in proper shape," he regarded the action as a purely equitable one, and had decided it on that basis, and as the suggestion was pressed in oral argument before us, that we should look at the matter here in the same light, unhampered by any narrow view of the pleadings and strict rules concerning the burden of proof thereunder, it seems to us proper to say that on an equitable view of the matter—such a view as a court of equity might take—the position of the defendant does not commend itself to us.

It is that, despite the fact that a settlement was made on December 26, 1899, which purported and is conceded was intended at least to release the plaintiff from any personal liability for services rendered before that date and

for any unsuccessful services rendered after it, and despite the fact that all the proceedings which the defendant could have taken in this case, had plaintiff given him the fullest leave to do so in its name, were taken by him (the appeal to the Circuit Court of Appeals not requiring, as Mr. Manning himself testifies, the use of its name, and the certiorari proceedings in the Supreme Court containing it), and despite the fact that these proceedings were all unsuccessful and futile, yet the release should be held for naught, because the bank wrongfully, but without actual damage to the defendant, refused its consent to the use of its name in the prosecution of the suit by appeal and certiorari proceedings, and that this practical cancellation of the release should be without the restoration of the *status quo* before it was given, and without any offer of the defendant to return in any form the considerable moving consideration for which it was given.    This certainly is not "equitable"; it is rather the enforcement of a penalty in favor of the defendant for a wrongful action, which resulted in no damage to him.

Whether or not the case of Swinnerton v. Monterey County, 76 Cal., 113, is correct in holding that in no case could a lawyer wrongfully discharged when serving under a contingent fee agreement recover damages if he could not have won the suit, we do not think that the application of "equitable" rules to mitigate "the technicalities" of the law can properly be made to effect such a result as the judgment below in this case.

It is true that this view of the matter does not take into account the alleged interference of the plaintiff with the desire of the defendant to file in the plaintiffs' names a creditors' or auxiliary bill against Frank Harris, John Hannah and the two Graffs, but the court below, although this is the only breach of the alleged contract of employment actually set up in the defendant's amended rejoinder, expressly disavowed any holding that the filing of such a bill was within the authority which he considered Mr. Manning had given or left to him at the time of the release,

saying that the matter of that proposed bill should be left out of the case entirely.

He could not reasonably have held otherwise, for the release and the receipts speak only of the suit of "Chick et al. v. The Northwestern Shoe Company et al. now pending in the Circuit Court of the United States," and the proceeds that might be recovered *"therein,"* and the amended rejoinder of the defendant says that it was a part of the release that the defendant should continue to represent the said plaintiff in said cause *therein* referred to. A creditor's bill upon a decree or judgment is a distinct suit, and an auxiliary bill does not substantially differ therefrom.

Moreover it appears from the appellee's own testimony that the question of such a creditor's bill was not mentioned at the time of the settlement of December 26, 1899.

Our conclusion is that the judgment of the Circuit Court must be reversed and judgment entered here in favor of the appellant against the appellee for $900, with interest on $1,000 at 4 per cent per annum from December 26, 1899, to February 14, 1903, when $100 was paid on one of the notes, and interest on $900 at the same rate from February 14, 1903, and it is so ordered.

*Reversed and judgment here.*